UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | | |
|---|---|---|
| FRANK ROSSELLO, on Behalf of Himself and All Others Similarly Situated, | ) | Case No. 3:12-cv-00493 |
| *Plaintiff,* | ) | CLASS ACTION |
| v. | ) | |
| KELLY J. GILL, WALLACE E. OLSON, CHAD A. MCCURDY, WILLIAM C. O'NEIL, JR., RICHARD M. BRAME, and ROBERT Z. HENSLEY, | ) | Senior Judge John T. Nixon |
| *Defendants.* | ) | Magistrate Judge Juliet E. Griffin |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

**TABLE OF CONTENTS**

I. INTRODUCTION ....................1

II. FACTUAL AND PROCEDURAL BACKGROUND....................2

A. Company Background ....................2

B. Covington's Offer to Acquire Advocat ....................4

C. Plaintiff's Complaint ....................7

III. CLASS CERTIFICATION SHOULD BE GRANTED ....................9

A. The Class Certification Requirements of Federal Rule 23(a) Have Been Satisfied....................12

1. The Numerosity Requirement of Federal Rule 23(a) (1)....................12

2. The Commonality Requirement of Federal Rule 23(a)(2)....................13

3. The Typicality Requirement of Federal Rule 23(a)(3) ....................16

4. The Adequacy of Representation Requirement of Federal Rule 23(a) (4) ....................17

B. The Class Certification Requirements of Federal Rule 23(b) Have Been Satisfied....................19

1. Class Certification Pursuant to Federal Rule 23(b)(3)....................19

2. Class Certification Pursuant to Federal Rule 23(b)(2)....................22

3. Class Certification Pursuant to Federal Rule 23(b)(1)(A) ....................24

IV. PLAINTIFF'S COUNSEL SHOULD BE APPOINTED TO LEAD THE ACTION........25

V. CONCLUSION....................25

## TABLE OF AUTHORITIES

**CASES**

*Abby v. City of Detroit*,
218 F.R.D. 544 (E.D. Mich. 2003) ........ 17

*Abel v. Keybank USA, N.A.*,
No. 03 CV-524, 2004 WL 540699 (N.D. Ohio Mar. 4, 2004). ........ 16

*Afro Am. Patrolmen's League v. Duck*,
503 F.2d 294 (6th Cir. 1974) ........ 13

*Agostino v. Quest Diagnositcs Inc.*,
256 F.R.D. 437 (D.N.J. 2009) ........ 19

*Allen v. Leis*,
204 F.R.D. 401 (S.D. Ohio 2001) ........ 12, 13

*Am. Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974) ........ 21

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ........ 20, 21, 24

*Andrews Farms v. Calcot, Ltd.*,
258 F.R.D. 640 (E.D. Cal. 2009) ........ 12, 16

*Baby Neal for and by Kanter v. Casey*,
43 F.3d 48 (3d Cir. 1994) ........ 11, 14

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ........ 9, 10

*Boggs v. Divested Atomic Corp.*,
141 F.R.D. 58 (S.D. Ohio 1991) ........ 12

*Bullick v. City of Philadelphia*,
110 F.R.D. 518 (E.D. Pa. 1986) ........ 13

*Califano v.Yamasaki*,
442 U.S. 682 (1979) ........ 9

*Chakejian v. Equifax Info. Servs. LLC*,
256 F.R.D. 492 (E.D. Pa. 2009) ........ 21

*Chamberlan v. Ford Motor Co.*,
223 F.R.D. 524 (N.D. Cal. 2004) ........ 20, 21

*Coleman v. Gen. Motors Acceptance Corp.*,
220 F.R.D. 64 (M.D. Tenn. 2004) .................................................................. 22, 23

*Comm. of Blind Vendors v. Dist. of Columbia*,
695 F. Supp. 1234 (D. D.C. 1988) ........................................................................ 13

*Conn. Ret. Plans & Trust Funds v. Amgen, Inc.*,
No. CV 07-2536 PSG (PLAx), 2009 WL 2633743 (C.D. Cal. Aug. 12, 2009) ..... 9, 10, 14

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995)...................................................................................... 12

*Craft v. Vanderbilt Univ.*,
174 F.R.D. 396 (M.D. Tenn. 1996) ....................................................................... 19

*Cross v. Nat'l Trust Life Ins. Co.*,
553 F.2d 1026 (6th Cir. 1977) .............................................................................. 17

*Daniels v. Centennial Group, Inc.*,
16 Cal. App. 4th 467 (1993) .................................................................................. 15

*De La Fuente v. Stokely-Van Camp, Inc.*,
713 F.2d 225 (7th Cir. 1983) ................................................................................ 17

*Deposit Guar. Nat'l Bank v. Roper*,
445 U.S. 326 (1980)............................................................................................... 12

*Dukes v. Wal-Mart, Inc.*,
509 F.3d 1168 (9th Cir. 2007) .............................................................................. 10

*E. Tex. Motor Freight Sys. Inc. v. Rodriguez*,
431 U.S. 395 (1977)................................................................................................. 9

*EEOC v. Printing Indus. of Metro*,
92 F.R.D. 51 (D.D.C. 1981).................................................................................. 13

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)............................................................................................... 10

*Eisenberg v. Gagnon*,
766 F.2d 770 (3d Cir. 1985).................................................................................. 10

*Esplin v. Hirschi*,
402 F.2d 94 (10th Cir. 1968) ........................................................................... 10, 11

*Fradkin v. Ernst*,
98 F.R.D. 478 (N.D. Ohio 1983) ..................................................................... 13, 23

*Gen. Tel. Co. of the Sw. v. Falcon*,
457 U.S. 147 (1982) .......... 9, 11, 16

*Gulf Oil Co. v. Bernard*,
452 U.S. 89 (1981) .......... 9

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......... 16, 20

*In re Am. Med. Sys. Inc.*,
75 F.3d 1069 (6th Cir. 1996) .......... 14, 16

*In re Cincinnati Radiation Litig.*,
187 F.R.D. 549 (S.D. Ohio 1999) .......... 13

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009) .......... 17

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
204 F.R.D. 330, 339 (N.D. Ohio 2001) .......... 12, 16

*In re JCC Holding Co. S'holders Litig.*,
843 A.2d 713 (Del. Ch. 2003) .......... 22

*In re Portal Software, Inc. Sec. Litig.*,
No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) .......... 13

*In re Seagate Tech. II Sec. Litig.*,
843 F. Supp. 1341 (N.D. Cal. 1994) .......... 10

*In re Wells Fargo Home Mort. Overtime Pay Litig.*,
571 F.3d 953 (9th Cir. 2009) .......... 21

*Jordan v. Commonwealth Fin. Sys., Inc.*,
237 F.R.D. 132 (E.D. Pa. 2006) .......... 21

*Kerrigan v. Phila. Bd. of Election*,
248 F.R.D. 470 (E.D. Pa. 2008) .......... 10

*Kutschbach v. Davies*,
885 F. Supp. 1079 (S.D. Ohio 1995) .......... 23

*Lessard v. Metro. Life Ins. Co.*,
103 F.R.D. 608 (D. Me. 1984) .......... 10

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*,
100 F.R.D. 468 (D. Mass. 1984) .......... 22



Case 3:12-cv-00493 Document 26 Filed 07/16/12 Page 5 of 34 PageID #: 99

*Mamula v. Satralloy, Inc.*,
578 F. Supp. 563 (S.D. Ohio 1983) ........................................................ 11, 16

*MCA, Inc. v. Matsushita Elec. Indus. Co.*,
785 A.2d 625 (Del. 2001) .......................................................................... 22

*Murray v. Local 2620*,
192 F.R.D. 629 (N.D. Cal. 2000)................................................................. 9, 10

*Nottingham Partners v. Dana*,
564 A.2d 1089 (Del. 1989) ........................................................................ 22

*O'Conner v. Boeing N. Am., Inc.*,
184 F.R.D. 311 (C.D. Cal. 1998) .................................................................. 14

*Peil v. Nat'l. Semiconductor Corp.*,
86 F.R.D. 357 (E.D. Pa. 1980)...................................................................... 11

*Pueblo of Zuni v. United States*,
243 F.R.D. 436 (D.N.M. 2007)..................................................................... 10

*Rakes v. Coleman*,
318 F. Supp. 181 (E.D. Va. 1970) ................................................................ 16

*Resnick v. Am. Dental Assoc.*,
90 F.R.D. 530 (N.D. Ill. 1981)...................................................................... 14

*Robinson v. Metro-N. Commuter R.R. Co.*,
267 F.3d 147 (2d Cir. 2001)......................................................................... 23

*Scholes v. Stone, McGuire & Benjamin*,
143 F.R.D. 181 (N.D. Ill. 1992).................................................................... 13

*Sec'y of Labor v. Fitzsimmons*,
805 F.2d 682 (7th Cir. 1986) ....................................................................... 17

*Sperling v. Donovan*,
104 F.R.D. 4 (D.D.C. 1984).......................................................................... 13

*Sprague v. Gen. Motors Corp.*,
133 F.3d 388 (6th Cir. 1998) ........................................................................ 16

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) .................................................................. 11, 14

*Thorogood v. Sears Roebuck & Co.*,
547 F.3d 742 (7th Cir. 2008) ........................................................................ 21



Case 3:12-cv-00493 Document 26 Filed 07/16/12 Page 6 of 34 PageID #: 100

*Thrope v. Ohio*,
173 F.R.D. 483 (S.D. Ohio 1997) .......... 13, 14, 15

*Turner v. Bernstein*,
768 A.2d 24 (Del. Ch. 2000) .......... 15, 22

*Vulcan Golf, LLC v. Google Inc.*,
254 F.R.D. 521 (N.D. Ill. 2008) .......... 17

*Walsh v. Pittsburgh Press Co.*,
160 F.R.D. 527 (W.D. Pa. 1994) .......... 10

*Walther v. Pension Plan for Salaried Emps. of Dayton-Walther Corp.*,
880 F. Supp. 1170 (S.D. Ohio 1994) .......... 16

*Welch v. Bd. of Dirs. of Wildwood Golf Club*,
146 F.R.D. 131 (W.D. Pa. 1993) .......... 10

*Wells v. McDonough*,
No. 97 C 3288, 1998 WL 160876 (N.D. Ill. Mar. 31, 1998) .......... 13

**OTHER AUTHORITIES**

1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (3rd ed. 1992) .......... 14, 16

J.W. Smith & H.B. Zobel, *Rules Practice* §23.1 (1975) .......... 21

**RULES**

Federal Rules of Civil Procedure
Rule 23(a) .......... 11
Rule 23(b)(1) .......... 11
Rule 23(b)(1)(A) .......... 24
Rule 23(b)(2) .......... 14, 23
Rule 23(b)(3) .......... 12, 19
Rule 23(g)(1) .......... 25

Plaintiff Frank Rossello ("Plaintiff"), by and through his undersigned counsel, hereby respectfully submits this motion seeking a determination as to whether the above-captioned matter (the "Action") pertaining to the failure of the Advocat Inc. ("Advocat" or the "Company") board of directors (the "Board" or the "Defendants") to negotiate or otherwise appropriately consider the various indications of interest submitted by Covington Investments, LLC ("Covington") concerning a potential strategic transaction is to be maintained as a class action lawsuit and whether Robbins Umeda LLP ("Robbins Umeda") and Barrett Johnston, LLC ("Barrett Johnston") should be appointed counsel for the Proposed Class (as defined herein) (the "Motion").

## I. INTRODUCTION

As required by Rule 23.01(b) of the Local Rules of Court for the United Stated District Court of the Middle District of Tennessee ("Local Rule 23.01(b)"), Plaintiff seeks an order from the Court certifying the Action as a class action pursuant to Rules 23(a), 23(b), and 23(c)(1) of the Federal Rules of Civil Procedure (the "Federal Rules"). Specifically, Plaintiff seeks certification of the following plaintiff class (the "Proposed Class"):

> All holders of Advocat Inc. common stock who have been, or will be, harmed by Defendants continued breaches of fiduciary duty in connection with Covington Investments, LLC's entreaties to acquire Advocat Inc. Excluded from the Class are Defendants and any person, firm, trust, corporation or other entity related to or affiliated with any Defendant.[1]

As discussed below, the four "prerequisites" to class certification contained in Federal Rule 23(a), namely numerosity, commonality, typicality, and adequacy, are satisfied here. Likewise, the requirements of Federal Rule 23(b)(1)-(3) have been met because: (i) prosecuting separate actions would create a risk of inconsistent or varying results for Defendants; (ii) Defendants continue to breach their fiduciary duties owed generally to Plaintiff and the other members of the Proposed Class

---

[1] The term "Defendants" refers to Kelly J. Gill, Wallace E. Olson ("Olson"), Chad A. McCurdy ("McCurdy"), William C. O'Neil, Jr., Richard M. Brame, and Robert Z. Hensley.

as a whole, such that the injunctive and other equitable relief being sought would be appropriate for the class as a whole; and (ii) questions common to the members of the Proposed Class "predominate over any questions affecting only individual members," and proceeding as a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy" at issue.

For these reasons, set forth more fully below, Plaintiff respectfully requests that the Court execute the Proposed Order submitted concurrently herewith, thereby (i) determining that this Action is properly maintainable as a class action; and (ii) certifying the Proposed Class as required by Local Rule 23.01(b) and Federal Rule 23(c)(1).

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Company Background

Founded in 1994, Advocat is a provider of long-term care services to nursing home patients in eight states throughout the Southeast and Southwest United States. ¶¶16, 23.[2] Among other things, the Company offers its customers (i) nursing health care services (including room and board, nutrition services, recreational therapy social services, housekeeping, and laundry services); (ii) ancillary medical services (including audiology, speech, occupational, and physical rehabilitation therapy services); and (iii) assisted living services. Additionally, the Company is a large provider of medical supplies, respiratory services, infusion therapies, and related clinical services.

Although the provision of health care services entails an inherent risk of liability, Advocat's recent legal track record sparks legitimate concerns. ¶24. As of December 31, 2011, Advocat was engaged in at least thirty-eight lawsuits asserting, among other things, claims for malpractice, negligence, and product liability.[3] *Id.* Many of these actions involve large damages claims which

---

[2] All paragraph references ("¶__" or "¶¶__") are to Plaintiff's Shareholder Complaint Based Upon Self-Dealing and Breach of Fiduciary Duty, filed on May 16, 2012 (the "Complaint").

[3] Four of these suits are currently scheduled for trial or mediation by November 2012.

will, and have, resulted in extensive defense costs. *Id*. Not surprisingly then, Advocat has seen its professional liability expenses rise in recent years – resulting in the expenditure of over $24 million since 2009. *Id.* This is a material amount of money when one considers that the Company reported net income from continuing operations of only $7.3 million over the same period. *Id*. Additionally, as of the close of calendar year 2011, Advocat had a total reported liability of $19.4 million, compared to current assets of $45.3 million and total assets of $116.7 million. *Id*. These figures are made even more alarming considering that Advocat's liability insurance coverage is substantially less than what would be required to satisfy the claims expected to be incurred by the Company. *Id*.

In addition to the rising professional liability expenses, Advocat is facing serious regulatory, reimbursement, and business headwinds. ¶¶3, 27. The largest impact comes from recent changes in government reimbursement. *Id.* In August 2011, the Centers for Medicare & Medicaid Services issued a final regulation that reduced Medicare payments to all skilled nursing facilities beginning October 1, 2011, by an estimated 11.1%. *Id*. According to the Company's former Chief Financial Officer ("CFO"), Glynn Riddle ("Riddle"), "this is a dramatic change in our reimbursement rate will necessitate reevaluation of our efforts and statistic plan." ¶27.

Not surprisingly, Advocat's myriad legal issues and struggling financial outlook have resulted in the Company's steady decline in market value. ¶26. Additionally, these problems have caused certain of the Company's most prominent executives to resign in recent years. Indeed, William R. Council, III, resigned as the CEO and a director of Advocat effective September 30, 2011, followed shortly thereafter by CFO Riddle effective March 31, 2012. ¶28. Clearly, Advocat faces substantial risks to its continuing as an independent going-concern absent a significant influx of non-debt capital. ¶26.

## B. Covington's Offer to Acquire Advocat

Covington first approached Advocat on February 27, 2012, with its proposal to acquire all of the Company's outstanding shares for $8.50 per share (the "Offer"). ¶¶2, 29, 31. Over the course of the ensuing two-and-a-half months, Covington reiterated its interest in entering into a proposed transaction with the Company on the terms laid out in the Offer by way of letters dated March 22 and April 12, 2012 – all to no avail. *Id.* Covington even went so far as to state that it was willing to increase its Offer if due diligence so warranted. ¶¶2, 30. Still, despite the cooperative and non-coercive nature of Covington's advances, Defendants refused to negotiate or even interact in any productive manner with Covington. ¶2.

Unable to engage the Board in any meaningful dialogue, Covington took its Offer to the public by issuing a press release which both disclosed the terms of the Offer and included an open letter to defendants Olson and McCurdy. ¶31. The press release and letter stated:

> ATLANTA, May 11, 2012 /PRNewswire/ -- Covington Investments, LLC (together with its affiliates ("Covington")), today submitted a non-binding proposal to acquire all outstanding common shares of Advocat Inc. (AVCA) for $8.50 per share in cash in a negotiated transaction. Covington is a privately owned and growing provider of long-term care services in Florida, Ohio and Tennessee. In a letter sent to the Company's Board of Directors this morning, Covington details, among other things, that its ***proposal represents certain and substantial value for Advocat's shareholders at an approximate 100% premium*** over the Company's unaffected share price and ***expresses its desire to open negotiations aimed at reaching a mutually agreeable transaction***. The consummation of the transaction ***would not be subject to a financing contingency***, nor does Covington believe the transaction would encounter regulatory delays. The full text of the letter, made public for the benefit of all Advocat shareholders, follows:
>
> May 11, 2012
>
> Board of Directors
> Advocat Inc.
> 1621 Galleria Boulevard
> Brentwood, Tennessee 37027
> Attn: Mr. Wallace E. Olson, Chairman of the Board
> Mr. Chad A. McCurdy, Vice Chairman of the Board
>
> Dear Messrs. Olson and McCurdy:
>
> In letters on February 27, March 22, and April 12, 2012, we made what we believe to be very compelling proposals to acquire Advocat Inc. ("Advocat") in a transaction that would provide substantial value to your shareholders. We were ***surprised and***

***disappointed that Advocat's Board of Directors has shown no interest in a discussion to explore our acquisition proposal. We are confident your shareholders would want and expect the Board to explore with us the possibility of such a compelling transaction***. We, therefore, have decided to make our proposal public in order to inform Advocat's shareholders of the significant value they could receive in a transaction with Covington.

***We remain interested in pursuing discussions in a mutually agreeable and negotiated manner if possible***.

To reiterate the key terms of our proposal, we have submitted a non-binding indication of interest to acquire all of the outstanding shares of common stock of Advocat at a ***price of $8.50 per share in cash in a mutually agreeable and negotiated transaction*** (the "Proposal"). The Proposal values Advocat's common shareholders' equity at approximately $51 million, or approximately $44 million excluding the shares already owned by Covington's affiliates. As you know, this price was increased from our initial indication of interest on February 27th of $7.50 per share to be responsive to the Advocat Board's indication that such price was not sufficient to discuss a combination.

It is our view that our ***proposed $8.50 per share offer represents an extraordinary value to shareholders of Advocat as the price represents***:

***a 96% premium above the closing price of $4.34 on May 10, 2012***;
***a 71% premium over the average closing share price during the past 30 days***;
***a 55% premium over the average closing share price during the past 90 days***; and
***a 47% premium over the average closing price during the past three years***.

Additionally, the last time shares of Advocat closed at or above $8.50 per share was more than two and a half years ago in November 2009.

Our Proposal represents a multiple of the following:

6.0x *enterprise* value to latest twelve months EBITDA, compared to the comparable public company[1] average of 5.2x; and
7.3x *adjusted* enterprise value[2] to latest twelve months EBITDAR, compared to the comparable public company[1] average of 6.3x.

Since Advocat's earnings per share have been negative for the twelve month period ending March 31, 2012, this offer is even more compelling when compared to the comparable public company[1] average price to earnings multiple of 9.0x.

***We do not understand how the Board's unwillingness to even discuss our Proposal in favor of an uncertain and questionable standalone strategy can serve the best interests of Advocat's shareholders***. In light of Advocat's financial performance, as evidenced most recently in its first quarter earnings release on May 9, 2012, we are even more puzzled by the Board's refusal to entertain our Proposal. We believe, based on an extensive review of public information about Advocat, that our proposed purchase price is a full and fair one. As we have indicated to you, ***if Advocat's Board does not believe that our Proposal represents attractive value, we think it would be a better course for you to provide us with access to non-public information so that you can explain where you see greater value. If you can demonstrate that there is greater value than is apparent from publicly available information, we would be prepared to consider increasing the price of our Proposal***.

This letter and our Proposal is an expression of Covington's interest only, and neither this letter nor any course of dealing shall constitute an agreement in principle or a legally binding offer or otherwise legally obligate either Covington (or any of its affiliates) or Advocat to proceed with or consummate any transaction unless and until a definitive agreement is executed. We reserve the right to discontinue discussions regarding, and withdraw, our Proposal at any time. Our Proposal is subject to customary conditions, including, among other things, our satisfaction with the results of due diligence, the negotiation of a mutually satisfactory definitive agreement, and receipt of approval by Advocat's primary landlord, Omega Healthcare Investors, Inc.

As we mentioned in our prior letters, Covington has held extensive discussions with our financing sources regarding this potential opportunity. In addition, Covington's recent successful closing of a $98 million syndicated credit facility to fund another acquisition and refinance existing debt gives us the confidence that we will be able to ***close in a timely manner on the purchase of Advocat without a financing contingency***. Supplying us with the non-public information we have requested will allow us to expedite the completion of necessary due diligence and execution of appropriate definitive agreements.

Our team of financial advisors, Avondale Partners, LLC, legal advisors, Bass Berry & Sims PLC and Baker Donelson Bearman, Caldwell & Berkowitz, PC, and financing sources are standing by to assist with the due diligence and transaction process. Given our team's understanding of the long-term care sector and skilled nursing facilities in particular, we are able to complete such due diligence expeditiously and with minimal disruption if given access to management and upon receipt of relevant information. Upon execution of a definitive agreement, there would not be a financing contingency and we do not anticipate any regulatory delays.

Given our willingness to propose a purchase price at an attractive premium, as well as the regulatory, reimbursement and business headwinds facing Advocat, we believe it is ***very much in your shareholders' best interests for you to start a dialogue with us about our Proposal and provide us with access to the relevant company information. Your continuing refusal to engage with us only serves to delay and deny your shareholders the opportunity to consider this compelling transaction***.

We look forward to discussing this transaction further with you.

Sincerely,

/SIG/

John E. McMullan
President
Covington Investments, LLC

¶31 (emphasis added).

Just hours after the press release and letter were released, Advocat filed an amendment to its Schedule 13D (the "13D/A") with the U.S. Securities and Exchange Commission ("SEC"). The 13D/A responded to Covington's press release and letter by stating, in relevant part, as follows:

> ***On May 11, 2012, Covington Investments, LLC ("Covington"), an affiliate of the Reporting Persons, issued a press release announcing that it has submitted a non-binding proposal to acquire all outstanding common shares of the Issuer for $8.50 per share in cash in a negotiated transaction***. A copy of the press release is attached hereto as Exhibit G and is incorporated herein by reference. As described in more detail in the press release and related letter to the Issuer's Board of Directors (the "Board"), ***Covington noted that the proposal represents a premium of 96% over the Issuer's closing price on May 10, 2012. Covington also noted that the consummation of the transaction would not be subject to a financing contingency and that Covington does not believe the transaction would encounter regulatory delays***.
>
> ***Covington's press release stated that following several unsuccessful attempts to engage the Issuer in discussions regarding its proposal, Covington has decided to make its proposal public in order to inform the Issuer's shareholders of the significant value they could receive in a negotiated transaction with Covington***.
>
> ***In the letter to the Board, Covington stated it believes the Issuer's shareholders would expect the Board to explore Covington's proposal, and that it did not understand how the Board's unwillingness to even discuss its proposal in favor of an uncertain and questionable standalone strategy can serve the best interests of the Issuer's shareholders***. Covington requested that, if the Board does not believe that the proposal represents attractive value, that the Issuer provide Covington with access to non-public information to explain where the Board sees greater value, and that if there is greater value than is apparent from publicly available information, Covington would be prepared to consider increasing the price of its proposal.
>
> In concluding the letter, Covington reiterated its willingness to engage in constructive dialogue with the Issuer about its proposal, and that the Board's continuing to refuse to engage with Covington only serves to delay and deny the Issuer's shareholders the opportunity to consider its compelling proposal.

¶32 (emphasis added). Three days later, on May 14, 2012, Advocat also filed a Form 8-K with the SEC officially rejecting Covington's Offer. ¶33.

### C. Plaintiff's Complaint

On May 16, 2012, Plaintiff, both individually and on behalf of the other members of the Proposed Class, filed this Action with the Court. The Complaint asserts that Defendants' refusal to negotiate – or engage in any meaningful discussions – with Covington or its advisers regarding the Offer constitutes a breach of fiduciary duty for which Plaintiff (and the other members of the Proposed Class) are entitled to relief. ¶¶1, 6, 33, 44-47. Specifically, Plaintiff contends that Defendants have entrenched themselves in their positions with the Company at the expense of the Proposed Class members by failing to negotiate with Covington concerning its Offer which (in light

of the material liabilities and financial headwinds faced by the Company) provides Advocat shareholders with substantial value over the standalone prospects of the Company. ¶¶1, 6, 47. Plaintiff's Complaint specifically points to the following facts in support of this claim:

- The fact that the Offer represented, at the time the Complaint was filed, (i) a 96% premium over the closing price of Advocat's shares the day before the Offer was publicly announced; (ii) a 71% premium over the average price of Advocat's shares over the past thirty days; (iii) a 55% premium over the average price of Advocat's shares over the past three months; and (iv) a 47% premium over the average price of Advocat's shares over the past three years (¶4);
- The fact that the Company was subject to a number of debilitating legal liabilities which negatively affected Advocat's financial performance (¶¶3, 24-26, 29);
- The fact that the future prospects for the long-term care industry were, at best, extremely uncertain (¶¶3, 27); and
- The fact that the Offer was based solely on publicly available information and Covington had expressed its willingness to increase the consideration to be paid in the proposed transaction upon conducting due diligence. ¶¶2, 29-32.

To make matters worse, Advocat has a number of draconian antitakeover defenses in place which further ensure that Defendants will be able to quell any takeover attempts and protect their own positions at the Company – all at the expense of Plaintiff and the Proposed Class. ¶¶7, 34. Specifically, Advocat has a poison pill in place which gives Defendants the power to flood the market with additional shares so that buying the Company in a hostile takeover would become prohibitively expensive and difficult. *Id.* In addition, Advocat's Board is staggered, with certain directors serving different term lengths than others. *Id.* Having a staggered board deprives Advocat shareholders of the control that comes from the opportunity to elect the full Advocat Board at any one time. *Id.*

In sum, Plaintiff contends the members of the Board have demonstrated a refusal to act in accordance with the duties prescribed to them by law by failing to negotiate with Covington regarding a transaction that could increase shareholder value. ¶¶6, 29. This is true despite the substantial premium represented by the Offer, the non-coercive nature of the Offer, and Covington's confidence in its ability to fully finance a transaction, which it believes would not encounter any regulatory delays. ¶¶29, 31. Instead, Defendants have demonstrated a course of action consistent only with their own self-serving motives – namely, creating barriers to a change of control in order to ensure that they will retain their prestigious and lucrative positions with the Company. ¶¶6, 29, 31. Accordingly, Plaintiff seeks equitable relief compelling the Board to properly exercise its fiduciary duties, thereby ensuring an open and fair process to maximize Advocat shareholder value. ¶¶1, 8, 47.

## III. CLASS CERTIFICATION SHOULD BE GRANTED

Federal Rule 23 allows plaintiffs to sue on behalf of themselves and a "class" of unnamed individuals who are similarly situated. The United States Supreme Court has noted that "'the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under [Federal] Rule 23.'" *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v.Yamasaki*, 442 U.S. 682, 701 (1979)). Further, "[c]lass actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981).

In considering whether to certify a class, it is well settled that a court must assume the truth of the allegations in the complaint and that a cause of action exists. *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 405 (1977); *Blackie v. Barrack*, 524 F.2d 891, 900-01 (9th Cir. 1975); *Murray v. Local 2620*, 192 F.R.D. 629, 631 (N.D. Cal. 2000); *Conn. Ret. Plans & Trust Funds v. Amgen, Inc.*, No. CV 07-2536 PSG (PLAx), 2009 WL 2633743, at *4 (C.D. Cal. Aug. 12, 2009). At

this juncture, the Court should not look into the merits of Plaintiff's case.[4] Indeed, Plaintiff is not required to make an "extensive evidentiary showing" for class certification; the Court must merely have sufficient information to form a reasonable judgment. *See Blackie*, 524 F.2d at 901; *Conn. Ret. Plans*, 2009 WL 2633743, at *3-*4.

Furthermore, courts have made it clear that Federal Rule 23 should be liberally construed so as to err in favor of allowing cases to proceed as class actions. *See Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985) (even in a "'doubtful case ... any error, if there is to be one, should be committed in favor of allowing a class action'");[5] *In re Seagate Tech. II Sec. Litig.*, 843 F. Supp. 1341, 1350 (N.D. Cal. 1994); *Kerrigan v. Phila. Bd. of Election*, 248 F.R.D. 470, 473 (E.D. Pa. 2008); *Walsh v. Pittsburgh Press Co.*, 160 F.R.D. 527, 529 (W.D. Pa. 1994). Indeed, all uncertainties should be resolved in favor of maintenance as a class action. *Pueblo of Zuni v. United States*, 243 F.R.D. 436, 444 (D.N.M. 2007) (citing *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968)) (noting that the court should resolve any doubt regarding the propriety of certification "in favor of allowing the class action" so that it will remain an effective vehicle for deterring corporate wrongdoing).[6] As the court stated in *Peil v. Nat'l. Semiconductor Corp.*:

> Without the class action device, many actionable wrongs would go uncorrected and persons affected thereby unrecompensed. In essence, the class action device is a

---

[4] *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) ("We find nothing in either the language or history of [Federal] Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."); *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1177 (9th Cir. 2007) (objections not related to Federal Rule 23's requirements, but to ultimate merits of the case, should properly be addressed by a jury considering the merits rather than a judge considering class certification); *Murray*, 192 F.R.D. at 631 ("[A] plaintiff need not make a prima facie showing that he will prevail on the merits for class certification to be granted.").

[5] Here, as throughout, all emphasis is deemed added and citations and footnotes are deemed omitted unless otherwise noted.

[6] *See also Welch v. Bd. of Dirs. of Wildwood Golf Club*, 146 F.R.D. 131, 134 (W.D. Pa. 1993) (in doubtful cases, "courts should err in favor of allowing the class certification"); *Lessard v. Metro. Life Ins. Co.*, 103 F.R.D. 608, 610 (D. Me. 1984).

> bona fide method for redressing violations of the [ ] laws and for compelling compliance with their mandates. Accordingly, "the interests of justice require that in a doubtful case, ... any error, if there is to be one, should be committed in favor of allowing the class action."

86 F.R.D. 357, 364 (E.D. Pa. 1980); *see also Esplin*, 402 F.2d at 101.

Class certification is specifically governed by Federal Rule 23, which requires that four elements be satisfied before an action may be maintained as a class action: (i) "the class is so numerous that joinder of all members is impracticable;" (ii) "there are questions of fact or law common to the class" that predominate over individual questions; (ii) "the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and (iv) "the representative parties will fairly and adequately protect the interests of the class." Federal Rule 23(a); *Mamula v. Satralloy, Inc.*, 578 F. Supp. 563, 569 (S.D. Ohio 1983); s*ee also Falcon*, 457 U.S. at 161; *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 55-56 (3d Cir. 1994); *Staton v. Boeing Co.*, 327 F.3d 938, 953, 957 (9th Cir. 2003).

Class certification also requires satisfaction of at least one of the conditions of Federal Rule 23(b). Plaintiff moves pursuant to Federal Rules 23(b)(1)-(3). A class may be certified pursuant to Federal Rule 23(b)(1) where

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Federal Rule 23(b)(1). Similarly, Federal Rule 23(b)(2) permits class certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Finally, a class can be certified pursuant to Federal Rule 23(b)(3) if "the questions of law or

fact common to class members predominate over any questions affecting only individual members, and [ ] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Federal Rule 23(b)(3) lists four "matters pertinent to these findings," namely:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Federal Rule 23(b)(3)(A)-(D).

### A. The Class Certification Requirements of Federal Rule 23(a) Have Been Satisfied

#### 1. The Numerosity Requirement of Federal Rule 23(a) (1)

The first requirement of Federal Rule 23(a) is that the class members are so numerous that joinder is not practicable. There is no minimum or magic number required for certification; rather, numerosity goes primarily to the impracticability of joining each class member as a party in a single action. *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 339 (N.D. Ohio 2001). Where joinder is impractical, a suit may be maintained as a class action in the interest of judicial economy and to ensure access to the judicial system. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) . Joinder need not be impossible, only impracticable, "difficult," or "inconvenient." *Allen v. Leis*, 204 F.R.D. 401, 406 (S.D. Ohio 2001); *see also Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58, 63 (S.D. Ohio 1991) ("Satisfaction of the numerosity requirement does not require that joinder is impossible, but only that plaintiff will suffer a strong litigational hardship or inconvenience if joinder is required.").

Although no minimum number of class members is required, the numerosity prerequisite is generally satisfied if it is reasonable to conclude that the number of members of the proposed class is greater than forty. *Andrews Farms v. Calcot, Ltd.*, 258 F.R.D. 640, 651 (E.D. Cal. 2009) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)) (noting that numerosity may be presumed with as few as forty potential class members). Indeed, the presumption arises that

joinder is impracticable where the proposed class is forty members or larger; *see also Fradkin v. Ernst*, 98 F.R.D. 478, 487 (N.D. Ohio 1983) ("[t]he Sixth Circuit has held that a class of 35 members is sufficient to meet the [numerosity] requirement" (citing *Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974))).[7]

Plaintiff contends Defendants have breached their fiduciary duties owed to each and every public shareholder of Advocat.[8] As each of these Advocat shareholders suffered the same harm, they are each part of the Proposed Class making joinder of each of them impossible. *See Wells v. McDonough*, No. 97 C 3288, 1998 WL 160876, at *2 (N.D. Ill. Mar. 31, 1998) (finding the numerosity requirement satisfied when "'the class and subclass members are so numerous that joinder of all members is impossible'"). As such, it is clear that the Proposed Class satisfies any numerousity requirement of Federal Rule 23(a) (1) for class certification.

**2. The Commonality Requirement of Federal Rule 23(a) (2)**

The commonality standard of Federal Rule 23(a) (2) is met if there are "common questions of law and fact" among the class members. *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *5 (N.D. Cal. June 30, 2007). The commonality standard "has been characterized as a 'low hurdle' easily surmounted." *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992); *Thrope v. Ohio*, 173 F.R.D. 483, 488 (S.D. Ohio 1997). Indeed, the commonality test "is qualitative rather than quantitative, that is, there need be only a single issue

---

[7] *See also Allen*, 204 F.R.D. at 406 (citing "the 'rule of thumb' that forty plaintiffs are enough to make joinder impracticable"); *In re Cincinnati Radiation Litig.*, 187 F.R.D. 549, 552 (S.D. Ohio 1999) (eighty members); *Comm. of Blind Vendors v. Dist. of Columbia*, 695 F. Supp. 1234, 1242 (D. D.C. 1988) (sixty-three members); *Sperling v. Donovan*, 104 F.R.D. 4, 7 (D.D.C. 1984) (forty-six class members); *EEOC v. Printing Indus. of Metro*, 92 F.R.D. 51, 53 (D.D.C. 1981) (twenty five to thirty persons); *Bullick v. City of Philadelphia*, 110 F.R.D. 518, 520 (E.D. Pa. 1986) (140 persons).

[8] As of May 16, 2012, Advocat had over 5.8 million shares outstanding. ¶37. As of February 17, 2012, these shares were held by no less than 242 different holders of record along with a number of other individuals or entities who held their shares in the street name of their broker/dealers. *See* Form 10-K filed by Advocat with the SEC on March 7, 2012, available online at http://www.sec.gov/Archives/edgar/data/919956/000095012311022640/g26377e10vk.htm

common to all members of the class." *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996) (citing 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3.10, at 3-47 (3rd ed. 1992)); *see also Thrope*, 173 F.R.D. at 488. "[A] few factual variations among the class grievances will not defeat commonality so long as class members' claims arise from 'shared legal issues' or 'a common core of salient facts.'" *Conn. Ret. Plans*, 2009 WL 2633743, at *5 (quoting *Staton*, 327 F.3d at 953); *see also Baby Neal*, 43 F.3d at 56 (noting that not *every* question of law or fact must be common to each class member).[9]

Here, each member of the Proposed Class is the victim of a common course of misconduct engaged in by Defendants. Plaintiff has alleged numerous questions of law and fact common to the members of the Proposed Class that form the core of the Action and predominate over the questions that may affect individual members thereof, including:

- whether the Defendants have breached any of their fiduciary duties to Plaintiff and the other members of the Proposed Class, including the duties of good faith, due care, honesty, and/or fair dealing, by:
    - failing to apprise themselves of Advocat's true value, or the benefits of pursuing the Covington Offer or an alternate transaction, by, among other things, considering the merits of such transactions and engaging in a market check or canvas of the market; or
    - failing to adequately consider the Covington Offer;

---

[9] *See O'Conner v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 330 (C.D. Cal. 1998) (there must be some issue involved that is common to the class and relief must turn on questions of law applicable in the same manner to each class member); *Resnick v. Am. Dental Assoc.*, 90 F.R.D. 530, 538-39 (N.D. Ill. 1981) (A diversity of factual circumstances underlying individual class members' claims is irrelevant for Federal Rule 23(a) 2) purposes as long as "there are questions of law or fact common to the class.") (quoting Federal Rule 23(b)(2)).

- whether the Defendants, in bad faith and for improper motives (i.e. to secure their positions with Advocat), have impeded or erected barriers to discourage offers for the Company or its assets from being submitted; and

- whether the Defendants have irreparably harmed Plaintiff and the other members of the Proposed Class.

Indeed, all these questions arise from the conduct of Defendants in connection with Covington's Offer as alleged in the Complaint. Defendants' refusal to negotiate or even interact in any productive manner with Covington constitutes a breach of the Defendants' fiduciary duties as owed to Plaintiff and each of the Proposed Class members. As defendants' "misconduct [is] the single, pivotal, and common issue," common questions of law and fact predominate, making class certification appropriate. *See Daniels v. Centennial Group, Inc.*, 16 Cal. App. 4th 467, 473 (1993) (overturning trial court's denial of class certification where Defendants fraudulently induced thousands of investors to approve a consolidation of partnerships into a single entity by disseminating false and misleading solicitation statements). Absent class certification, lawsuits filed by the Proposed Class members "would require resolution of the same legal issue." *Thrope*, 173 F.R.D. at 488.

As the factual allegations and associated causes of action contained in the Complaint do not vary from one Proposed Class member to another, the commonality requirement of Federal Rule 23(a) (2) for class certification is satisfied. *See Turner v. Bernstein*, 768 A.2d 24, 31 (Del. Ch. 2000) (finding the commonality requirement for class certification to be satisfied when the claims for breach of fiduciary duty against Defendants "involve one set of actions by defendants creating a uniform type of impact upon the class of stockholders.").

### 3. The Typicality Requirement of Federal Rule 23(a) (3)

The typicality of claims or defenses requirement is satisfied if the named Plaintiff is a proper member of the class, with the disputed issue predominating over their claims as well as the class claims. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). This ensures that "the representative plaintiffs' interests are aligned with those of the proposed class, and in pursuing their own claims, the named plaintiffs will also advance the interests of the class members." *Inter-Op Hip Prosthesis*, 204 F.R.D. at 341 (citing *Am. Med. Sys.*, 75 F.3d at 1081). A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Am. Med. Sys.*, 75 F.3d at 1082 (quoting 1 Newberg & Conte, supra, § 3-13, at 3-76). This is essentially the same standard as the commonality requirement. *Rakes v. Coleman*, 318 F. Supp. 181, 190 (E.D. Va. 1970) ("The second requirement [typicality] in effect restates the first [commonality]."). Like commonality then, "the test for typicality is not demanding." *Abel v. Keybank USA, N.A.*, No. 03 CV-524, 2004 WL 540699, at *3 (N.D. Ohio Mar. 4, 2004).

While the commonality requirement refers to common questions of the class, typicality connects the representative to the class. *Andrews Farms*, 258 F.R.D. at 651; *see also* 1 Newberg & Conte, *supra* §3:13, at 317. It essentially requires courts to inquire as to whether "the representatives' claims are similar enough to those of the class so that the representatives will adequately represent the class." *Walther v. Pension Plan for Salaried Emps. of Dayton-Walther Corp.*, 880 F. Supp. 1170, 1178 (S.D. Ohio 1994) (citing *Falcon*, 457 U.S. at 152). The Sixth Circuit has explained that this requirement, "simply stated," means that "as goes the claim of the named plaintiff[s], so goes the claims of the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998); *see also Mamula*, 578 F. Supp. at 571 ("the interests of the named plaintiffs are typical of or coextensive with the interests of the other members of the class"). As long as the

representative's claim arises from the same practice or course of conduct that gives rise to claims of other class members and is based on the same legal theory, the typicality requirement is met. *Abby v. City of Detroit*, 218 F.R.D. 544, 547 (E.D. Mich. 2003); *see also Vulcan Golf, LLC v. Google Inc.*, 254 F.R.D. 521, 526 (N.D. Ill. 2008) ("'The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named Plaintiff and those of other class members.'") (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).

Here, Plaintiff's claims are not only typical, they are identical to the claims of the Proposed Class as a whole. As described above, Defendants have breached their fiduciary duties to all Advocat shareholders in the same manner by failing to negotiate with Covington, or in any way consider its Offer to acquire the Company. Accordingly, as Plaintiff is, and at all relevant times has been, a shareholder of Advocat, his claims are typical of all the other Proposed Class members' claims. The typicality requirement of Federal Rule 23(a)(3) for class certification is, therefore, satisfied.

**4. The Adequacy of Representation Requirement of Federal Rule 23(a) (4)**

The adequacy of representation requirement is satisfied if (i) Plaintiff and his counsel will vigorously prosecute the action on behalf of the class; and (ii) there are no antagonistic interests between the representative party and the class. *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977) ("[i]n making the determination of adequacy of representation, the district court should consider the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent"); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 41-42 (2d Cir. 2009); *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986).

First, Plaintiff will serve as an adequate representative of the Proposed Class. There are no disabling conflicts of interest between Plaintiff and the other Proposed Class members. Like the

other Proposed Class members, Plaintiff has been harmed as a result of the alleged breaches of fiduciary duty engaged in by Defendants. Moreover, there are no unique defenses which apply only to the named Plaintiff. Further, Plaintiff has a strong motivation to vigorously prosecute this Action in order to ensure that the value of his investment in Advocat is maximized by Defendants. Accordingly, the interests of the other members of the Proposed Class will be protected by the appointment of Plaintiff as the class representative.

Second, the requirement of adequate representation is met by the qualifications of proposed class counsel, Robbins Umeda LLP ("Robbins Umeda") and Barrett Johnston, LLC ("Barrett Johnston" and, collectively with Robbins Umeda, "Proposed Class Counsel"). Specifically, Federal Rule 23(g)(1)(A) requires this Court to consider the following factors when appointing class counsel:

- the work performed by counsel in identifying or investigating potential claims in the action;
- counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action;
- counsel's knowledge of the applicable law; and
- the resources counsel will commit to representing the class.

As detailed herein, a review of each of these factors demonstrates the adequacy of Proposed Class Counsel to serve the interests of the Proposed Class in this Action.

Robbins Umeda has extensive experience in prosecuting shareholder derivative and class actions in corporate takeover situations and has demonstrated its ability to efficiently, aggressively, and effectively litigate these types of actions and protect the interests of those shareholders they represent. *See* Firm Resumes of Robbins Umeda LLP and Barrett Johnston as Exhibits 1 and 2, respectively, attached to the Declaration of Stephen J. Oddo in Support of Plaintiff's Motion for Class Certification filed concurrently herewith. In fact, Robbins Umeda has no less than four

attorneys who dedicate their practice solely to prosecuting breach of fiduciary duty claims arising in the context of corporate takeovers such as this. This experience makes them uniquely knowledgeable concerning the substantive law at issue in the Action.

Likewise, as detailed in their firm resume, Barrett Johnston has successfully litigated numerous merger related cases and has been appointed lead or liaison counsel in numerous complex class action cases in this Court. Indeed, in certifying complex cases as class actions, courts in this district have specifically noted the qualifications and experience of Barrett Johnston in this practice area. *See, e.g., Craft v. Vanderbilt Univ.*, 174 F.R.D. 396, 406 (M.D. Tenn. 1996) (stating the Barrett Johnston was "qualified and experienced to conduct the proposed class action" at issue as required by Federal Rule 23(a) (4) and 23(g)). Finally, Barrett Johnston's familiarity with Tennessee procedural law will serve Plaintiff and the Proposed Class well by ensuring that all pleadings are timely submitted and any local rules and/or deadlines are properly complied with. Collectively, these traits will serve Barrett Johnston well as local class counsel for Plaintiff and the other members of the Proposed Class.

Accordingly, Plaintiff and Proposed Class Counsel will adequately represent the interest of the Proposed Class in the Action. The adequacy of representation requirement of Federal Rule 23(a) (4) for class certification is, therefore, satisfied.

### B. The Class Certification Requirements of Federal Rule 23(b) Have Been Satisfied

#### 1. Class Certification Pursuant to Federal Rule 23(b)(3)

A class action may be maintained if the court finds that questions of law or fact common to the class predominate over any questions affecting only individual members, and if the court finds that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Federal Rule 23(b)(3); *see also Agostino v. Quest Diagnositcs Inc.*, 256 F.R.D. 437, 475 (D.N.J. 2009).

**a. Common Questions of Law or Fact Predominate over Questions Affecting Individual Class Members Under Federal Rule 23(b)(3)**

The "predominance inquiry tests whether [the Proposed Class is] sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526 (N.D. Cal. 2004). "In contrast to [Federal] Rule 23(a)(2), [Federal] Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022. "'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.'" *Id*. Such is the case here.

"A common nucleus of facts and potential legal remedies dominates this litigation." *Hanlon*, 150 F.3d at 1022. As set forth *supra* Section III(A)(2), Plaintiff has identified numerous legal issues which are common to Plaintiff and each of the Proposed Class members. These issues all arise from the same set of facts applicable to each Proposed Class member. Indeed, Plaintiff alleges that each and every Proposed Class member has been harmed in the same exact manner. Defendants have breached their fiduciary duties by preventing them from realizing the maximum value for their Advocat shares as a direct result of their refusal to negotiate – or even engage in any meaningful discussions – with Covington or its advisers regarding the Offer. ¶¶1-2, 4-6, 31-33. Further, the Proposed Class members each seek the same equitable relief – namely an injunction dissolving Defendants' defensive measures and preventing Defendants from placing their own interests ahead of those of Advocat shareholders by failing to ensure an open and fair process to maximize Advocat shareholder value. ¶¶1, 47. Finally, nearly any determination of law or fact made by the Court will affect each and every Proposed Class member in the same manner. Accordingly, any individual issue that must be resolved by the Court, if any, are dwarfed by the numerous factual and legal issues common to the Proposed Class as a whole.

### b. A Class Action Is the Superior Method of Adjudicating the Claims Asserted in the Action Under Federal Rule 23(b)(3)

Federal Rule 23(b)(3) also requires that a class action be superior to other methods for fairly and efficiently adjudicating the controversy for certification to be appropriate. "A principal purpose behind [Federal] Rule 23 class actions is to promote 'efficiency and economy of litigation.'" *In re Wells Fargo Home Mort. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) (citing *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974). In fact, the Seventh Circuit has recently noted that the class action is an "ingenious device for economizing on the expense of litigation." *Thorogood v. Sears Roebuck & Co.*, 547 F.3d 742, 744 (7th Cir. 2008).

Not only would separate and possibly scattered actions be needlessly repetitive and inefficient in the absence of class certification, but most, if not all, Proposed Class members would be discouraged from even seeking relief because their potential recovery would likely be outweighed by the cost of pursuing litigation. *See Amchem Prods.*, 521 U.S. at 617 ("'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'"); *Chamberlan*, 223 F.R.D. at 527 ("Here, few potential class members could afford to undertake individual litigation against Ford to recover the relatively modest damages at issue. Therefore, in the absence of a class action, few class members would have any meaningful redress against Ford as a practical matter.").[10] As the court stated in *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*:

> The benefits to the large number of class members, many of whose claims are so small that their size does not provide the impetus to bring individual actions, clearly

---

[10] *See* J.W. Smith & H.B. Zobel, *Rules Practice* §23.1 (1975) ("By allowing aggregation of numerous small claims in one action, class actions provide a judicial vehicle for redress which, were separate actions required, would not be financially feasible."); *see also Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 501 (E.D. Pa. 2009) (noting that without the class action suit, many putative class members would lack the incentive to bring individual suits against defendants, "'due in part to the small individual losses associated with each potential claim.'") (quoting *Jordan v. Commonwealth Fin. Sys., Inc.*, 237 F.R.D. 132, 140 (E.D. Pa. 2006)).

> outweigh any problems which may arise in the management of the class action. Economy will undoubtedly be achieved. Not only economy which will benefit members of the class, but economy which will benefit the judicial system as well.

100 F.R.D. 468, 471 (D. Mass. 1984).

Where, as here, Defendants may be liable to each member of the Proposed Class, and the Proposed Class consists of thousands of investors, a class action is clearly the superior litigation method. Indeed, a myriad of courts nationwide have certified lawsuits brought by public stockholders similar to the Action as class actions. *See, e.g.*, *Turner*, 768 A.2d at 27 (certifying a class of shareholders that held as of the date of the merger); *In re JCC Holding Co. S'holders Litig.*, 843 A.2d 713 (Del. Ch. 2003); *MCA, Inc. v. Matsushita Elec. Indus. Co.*, 785 A.2d 625 (Del. 2001); *Nottingham Partners v. Dana*, 564 A.2d 1089, 1095-96 (Del. 1989).

Based on the foregoing, it is clear that certifying the Action as a class action will best serve the interests of justice, the Proposed Class members, and the Court. Further, it will eliminate the possibility of repetitious litigation and provide Advocat's shareholders with a superior method of obtaining redress for the Defendants' breaches of fiduciary duty. Accordingly, this case is well-suited for class treatment pursuant to Federal Rule 23(b)(3).

**2. Class Certification Pursuant to Federal Rule 23(b)(2)**

In the event the Court determines that class certification pursuant to Federal Rule 23(b)(3) is inappropriate, the Class should be certified pursuant to Federal Rule 23(b)(2). *See Coleman v. Gen. Motors Acceptance Corp.*, 220 F.R.D. 64, 86 (M.D. Tenn. 2004) (citing Sixth Circuit authority for the proposition that "plaintiffs seeking class certification under [Federal] Rule 23(b)(2) are not required to make out the predominance of common issues or the superiority of the class action to other forms of adjudication, as they would be if they sought certification under [Federal] Rule 23(b)(3)"). Federal Rule 23(b)(2) provides that class certification is appropriate if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby

making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Federal Rule 23(b)(2); *see also Kutschbach v. Davies*, 885 F. Supp. 1079, 1086 (S.D. Ohio 1995) ("Rule 23(b)(2) is applicable when the court's equitable power is the primary form of relief sought, not when the 'appropriate final relief relates exclusively or predominantly to money damages.'"); *Coleman*, 220 F.R.D. at 85.

At a minimum, to certify a class under Federal Rule 23(b)(2), a court should also satisfy itself that: "'(1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits.'" *Id*. (quoting *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 164 (2d Cir. 2001). As the Action seeks an injunction to both prevent Defendants from: (i) placing their own interests ahead of those of Advocat and its shareholders by failing to ensure an open and fair process to maximize Advocat shareholder value; and (ii) initializing any defensive measure which may render the acquisition of the Company unduly burdensome or expensive for a potential acquirer, it is ripe for class certification pursuant to Federal Rule 23(b)(2).

Clearly then, Plaintiff as a representative of the Proposed Class has brought suit for injunctive relief given the absence of a possible monetary recovery. Additionally, Plaintiff and the Proposed Class are entitled to the sought after injunctive relief upon establishing that Defendants breached their fiduciary duties in connection with refusing to negotiate with Covington concerning their Offer to acquire the Company. Accordingly, certification pursuant to Federal Rule 23(b)(2) is proper. *See Fradkin*, 98 F.R.D. at 490-91 (certifying a class action brought by shareholders of a corporation pursuant to Federal Rule 23(b)(2) upon finding that (i) each shareholder had an "interest in the conduct of the corporation"; (ii) the suit involved "conduct which allegedly violates the rules

for the conduct of the corporation's business"; and (iii) defendants were the parties who engaged in the wrongful conduct and that conduct "had a similar effect upon all members of the class").

### 3. Class Certification Pursuant to Federal Rule 23(b)(1)(A)

Finally, in the event the Court determines class certification pursuant to Federal Rules 23(b)(2)-(3) are not warranted, the Action should be certified under Federal Rule 23(b)(1)(A) which provides that a class may be maintained as a class action if "prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for [Defendants]." Federal Rule 23(b)(1)(A). According to the Supreme Court, Rule 23(b)(1)(A) "takes in cases where the party is obligated by law to treat members of the class alike … or where party must treat all alike as a matter of practical necessity ..." *Amchem Prods.*, 521 U.S. at 614.

Here, Defendants owed the same fiduciary duties to each of the Proposed Class members. Accordingly, a failure to certify the Action as a class action would mean that each and every Advocat shareholder who sought relief for the alleged breaches of fiduciary duty engaged in by Defendants' in connection with the Covington Offer would have to file separate suits. Given the possibility that the prosecution of these separate actions could result in certain courts finding that Defendants' conduct did constitute a breach of the fiduciary duties owed to the Company's shareholders while other courts may not is precisely why certification of this Action as a class action is appropriate pursuant to Federal Rule 23(b)(1)(A). Absent certification Defendants are at risk of being subject to "inconsistent or varying adjudications" that would "establish incompatible standards of conduct" for Defendants as it concerns their fiduciary duties owed to the identically stituated Advocat shareholders.

## IV. PLAINTIFF'S COUNSEL SHOULD BE APPOINTED TO LEAD THE ACTION

As noted above, Federal Rule 23(g) requires that in appointing class counsel, courts should examine whether counsel (i) has investigated the class claims; (ii) is experienced in handling class actions and complex litigation; (iii) is knowledgeable regarding the applicable law; and (iv) will commit adequate resources to representing the class. Federal Rule 23(g)(1). For the reasons enumerated in connection with the adequacy of representation discussion *supra* Section III(A)(4), Proposed Class Counsel are well-qualified and easily meet these standards. As such, Plaintiff respectfully requests that the Court appoint Robbins Umeda and Barrett Johnston to serve as counsel for the Proposed Class as required under Federal Rule 23(c)(1)(B) in connection with certifying the Action as a class action.

## V. CONCLUSION

As demonstrated above, this action is ideally suited for class certification. Each of the prerequisites for a class action is met. Indeed, the nature of the wrongs complained of – the breach of Defendants' fiduciary duties owed to the millions of Advocat public shareholders – makes class action certification essential. For these reasons, Plaintiff respectfully requests that this Motion be granted in its entirety.

DATED: July 16, 2012

ROBBINS UMEDA LLP

*s/ Stephen J. Oddo*
STEPHEN J. ODDO

BRIAN J. ROBBINS
STEPHEN J. ODDO
ARSHAN AMIRI
EDWARD B. GERARD
JUSTIN D. RIEGER
CONRAD B. STEPHENS
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

brobbins@robbinsumeda.com
soddo@robbinsumeda.com
aamiri@robbinsumeda.com
egerard@robbinsumeda.com
jrieger@robbinsumeda.com
cstephens@robbinsumeda.com

BARRETT, JOHNSTON, LLC
GEORGE E. BARRETT
TIMOTHY L. MILES
217 Second Avenue North
Nashville, TN 37201
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
gbarrett@barrettjohnston.com
tmiles@barrettjohnston.com

Proposed Class Counsel and Counsel for Plaintiff

752655

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2012, a true and exact copy of the foregoing *Plaintiff's Memorandum of Law In Support of Motion for Class Certification and Appointment of Class Counsel* was served upon the following via the Court's Electronic Filing System:

Glenn B. Rose
HARWELL, HOWARD, HYNE, GABBERT
& MANNER, P.C.
333 Commerce Street, Suite 1500
Nashville, TN 37201
Telephone: (615) 256-0500
Facsimile: (615) 251-1059
gbr@h3gm.com

Michael R. Smith
B. Warren Pope
Bethany M. Rezek
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
mrsmith@kslaw.com
wpope@kslaw.com
brezek@kslaw.com

*Attorneys for Defendants*

s/Stephen J. Oddo